# EXHIBIT 1

Filed
D.C. Superior Court
06/03/2017 25:21PM
Clerk of the Court

IN THE SUPERIOR COURT FOR
WASHINGTON D.C.
CIVIL DIVISION

| | |
|---|---|
| **Sonia Edwards** )<br>**1508 Rollins Ave** )<br>**Capital Heights, MD 20743** )<br>      **Plaintiff,** )<br> )<br>      **vs.** )<br>**Not-For Profit Hospital Corporation d/b/a** )<br>**United Medical Center** )<br>**1310 Southern Ave. SE** )<br>**Washington D.C. 200012** <br>**Defendant.** | **Case No:** 2017 CA 003917 B<br><br>Jury Demand<br>For Violations of the D.C. Family Medical<br>Leave Act (DCFMLA) and the FMLA |

### Introduction

Plaintiff Sonia Edwards by and through her undersigned counsel Dhali PLLC bring this action for violations of the Family Medical Leave Act against the Defendant Not for Profit Hospital Corporation d/b/a United Medical Center (NFPHC), when it terminated Edwards on June 4, 2015 while she was on family medical leave (FMLA). Plaintiff may also have claims under the National Defense Authorization Act (NDAA) and the Whistleblower protection laws, which counsel for the plaintiff is still exploring. To that end, NFPHC are being placed on <u>notice</u> of these additional allegations, and once confirmed the plaintiff intends to amend this present complaint to purse these additional claims[1].

---

[1] Counsel for the Plaintiff was retained a few weeks ago while the action was still pending at the D.C. Office of Human Rights. Because of the impending deadline on her FMLA claims, counsel for the plaintiff is still reviewing documents and emails on her other allegations, while timely filing her claim under the limitations period for the FMLA. Additionally, some of the allegations in this complaint are also related to the pending action at the United States Federal District Court for the District of Columbia, in the matter of *John Lott v. NFPHC*, Case No. 16-cv-01546. Were the Defendant's to remove this action to the federal court, they are additionally being placed on notice of the relatedness of Edwards' claim to the matter of *Lott v. NFPHC*.

## I.     PARTIES

1. Sonia Edwards was employed by the Defendant NFPHC from March 2010 to June 4, 2015. At the time of her termination she was employed as a Human Resource Assistant, earning approximately $40,000 per year.  is a female. She is an employee under D.C. Code § 32-501(1) of the DCFMLA and under 29 U.S.C § 2611 *et.seq.,* of the FMLA.

2. The Defendant Not-for-Profit Hospital Corporation d/b/a/ United Medical Center (UMC) is a D.C. government hospital, offering community-based professional healthcare services to the residents of Ward 7, Ward 8 and bordering Prince George's County communities. UMC was formed under D.C. Code Chapter 9A § 44-951.02 *et seq.* It is an employer under D.C. Code 32-501(2) of the DCFMLA and 29 U.S.C. § 2611 *et.seq.,* of the FMLA.

## II.     JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over her DCFMLA claim under D.C. Code § 32-510; and her FMLA claim under 29 U.S.C. § 2611. *et.seq.*

4. This Court has personal jurisdiction as under D.C. Code § 13-422; D.C Code § 13-423 and/or D.C. Code § 2-1403.16.

5. Venue is proper in the District because the Plaintiff worked in the District, was terminated in the District and all the events in this action occurred in the District. All the records concerning the allegations are also in the District.

### III.     EXHAUSATION OF ADMINISTRATIVE REMEDIES

6. On June 15, 2015, Edwards filed a formal complaint with the D.C. Office of Human Rights. (OHR) alleging violations of the FMLA.

7. On April 24, 2017, the OHR issued a probable cause finding for an interference claim under the FMLA, OHR Docket Number 15-798-(P)(N). (Exhibit A)

8. Edwards has no further administrative obligations.

### IV.     STATEMENT OF FACTS[2]

9. The Not for Profit Hospital Corporation d/b/a United Medical Center (NFPHC) first hired Edwards as a temporary employee on March 2010. On April 2011, she was hired as a full time employee as a Human Resources Assistant II in the HR Department. She reported to the VP until March 16, 2015, and later to the HR Manager.

10. NFPHC is a recipient of federal dollars and to that end, receives money from the U.S. Department of Health and Human Services for operating a fully credentialed and authorized medical facility in the District of Columbia.

11. NFPHC is also presently under investigation by the federal government for overbilling for Medicare services. [3]

---

[2] The Statement of Facts are from the probable cause finding issued by the OHR dated April 24, 2017.

[3] "D.C. Troubled United Medical Center May Need A Tax Payer Bailout Again." https://www.washingtonpost.com/local/dc-politics/dcs-troubled-united-medical-center-may-need-a-taxpayer-bailout--again/2017/05/01/aeb9d2ca-2c26-11e7-be51-b3fc6ff7faee_story.html?utm_term=.b92a28c7c74c (last visited June 3, 2017)

12. To the best of Plaintiff's knowledge, for the duration of her employment, there are no contemporaneous written documents or records of her underperformance as an employee at NFPHC.

13. While she was employed, Edwards alleges that she was being told by her manager to engage in illegal and fraudulent activities including but not limited to hiring individuals and nurses who had yet to receive their nursing credentials.

14. On April 24, 2015, Edwards also complained to HR about harassment and that her manager had followed her to the washroom and waited outside[4].

15. As a recipient of federal aid hiring individuals who were not properly credentialed is a violation of federal laws and could jeopardize its federal funding.

16. On June 2, 2015, Edwards informed the VP of these illegal practices. Edwards felt that she was being blamed for the illegal hires. Edwards also met with the CEO David Small on June 3, 2015 to inform him of the illegal billing practices.

17. On June 3, 2015, her manager asked her to come to his office. During this meeting, her manager yelled at Edwards, saying, "Do you not know that you work for me?"

18. Edwards experienced an anxiety attack and/or started having difficulty breathing. She was nervous and her heart was beating fast. Since she was working at a hospital, she went to the Occupational Health Office to see a nurse.

19. The nurse advised Edwards to sit down, relax and take a deep breath.

20. She also provided her with a medical note.

21. The nurse advised Edwards to go home and follow up with her doctor.

---

[4] ¶24 of the First Amended Complaint (FAC) in the matter of *Lott v. NFPHC*, Case No. Case No. 16-cv-01546 [Dkt No. 18]

22. Edwards then went to the HR office, made two copies of the medical note and went to the Manager's office that she was being sent home for the day. The manager did not acknowledge Edwards. Edwards thus left the note in his "box on his door."[5]

23. Edwards also provided a copy of the note to the coordinator and Edwards asked for FMLA paperwork.

24. Edwards scheduled a fellow up appointment with her medical provider for June 4, 2015.

25. On June 4, 2015, the Chief Compliance Officer John Lott is advised that Edwards filed a harassment claim against HR manager Eric Johnson. He is forwarded Edwards' email to EVP Jackie Johnson, detailing the harassment.

26. Edwards also visits Lott on this day and informs him that because of the harassment from her supervisor, she visited "Occupational Health" on June 3, 2015 who referred her to her primary care physician (PCP). Edwards also advised Lott that she was on FMLA. Lott informed Edwards that he will speak about her issue with the CEO David Small. A few hours later, Lott learns that Edwards was terminated for "job abandonment" while being on FMLA.

27. On June 4, 2105, Edwards is then terminated by the Vice President on the grounds that she had "abandoned her position" and walked off the job site.

28. On June 8, 2015, Lott meets with the CEO to discuss the termination of Edwards and that it maybe afoul of the FMLA, the D.C. FMLA & DCHRA laws. Lott also informs the CEO that NFPHC has an obligation to be in compliance with the laws

---

[5] OHR probable cause finding pg. 6 of 15

and that they cannot terminate individuals who are on FMLA or make complaints of

harassment under the DCHRA.

**FRE 801(d)(2)(D) Admission by a Party Opponent.**

29. Also on June 8, 2015, CEO David Small admitted to Lott that Edwards' termination

may have been unlawful and instructed Lott to contact HR to reinstate her and to

promote her "*upward and outward.*"

30. Subsequently, or on or about June 9, 2015, Lott speaks with the EVP of HR and asks

to rescind her decision to terminate Edwards. She refuses and says she won't do it

because "Sonia is nasty and has to stay gone".

31. As of the date of this complaint, Edwards remains terminated by the Defendant.

32. On April 27, 2017, the District of Columbia Office of Human Rights issued a

probable cause finding and that NFPHC had violated the DCFMLA when it

terminated Edwards on June 4, 2015.

### V.    Count I. Interference Under the DCFMLA

33. Plaintiff reincorporates by reference all the allegations above

34. The D.C Family Medical Leave Act (DCFMLA) provides an eligible employee for a

total of sixteen (16) workweeks of medical leave during any twenty four (24) month

period when the employee becomes unable to perform the functions of her job. An

employee may bring a claim as under the DCFMLA when she has suffered damages

as a result of the denial. *See* D.C. Code § 32-501 et. seq.

35. In order to prevail on her DCFMLA claim, Edwards must show that she was (i)

eligible for FMLA benefits; (ii) Defendant interfered with, restricted or denied

Plaintiff's leave, or exercise of a right under the statute and (iii) Plaintiff was

prejudiced and suffered monetary injury. *See* D.C. Code § 32-507; *Hamilton v. Howard University*, 960 A.2d 308, 317 (D.C. 2008); *Gordon v. U.S. Capital Police*, 778 F.3d 158 (D.C. Cir. 2015)

36. As found by the OHR, Defendant interfered with Edwards' rights under the statute when they terminated Edwards on June 4, 2015, "based on a qualifying absence on June 3, 2015.[6]"

37. Defendant's acts caused Edwards to suffer economic losses, mental and emotional distress, physical injuries, embarrassment, humiliation and indignity.

38. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Edwards' statutory rights under the DCFMLA.

39. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including her attorney's fees.

### Count II. Retaliation Under the DCFMLA.

40. Plaintiff reincorporates by reference all the allegations above.

41. Under the DCFMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the DCFMLA. *See* D.C Code § 32-507.

42. In the present instance, the Plaintiff engaged in protected activity when she requested FMLA leave on June 3, 2015 from the Defendant.

43. Defendant denied her the benefits under the statute and terminated her on June 4, 2015 for "abandoning her position."

---

[6] OHR probable cause finding pg. 12 of 15.

44. Because of the close proximity of the materially adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing a claim.

45. Defendants' acts caused Edwards to suffer economic losses, physical injuries, mental and emotional distress, embarrassment, humiliation and indignity.

46. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Edwards' statutory rights under the DCFMLA.

47. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including her attorney's fees.

**Count III. Interference Under the FMLA**

48. Plaintiff incorporates by reference all the allegations above.

49. The federal Family Medical Leave Act (FMLA) provides an eligible employee for a total of twelve (12) workweeks of medical leave during any twelve (12) month period when the employee becomes unable to perform the functions of her job.

50. In order to prevail on her FMLA claim, Edwards must show that she was (i) eligible for FMLA benefits; (ii) Defendant interfered with, restricted or denied Plaintiff's leave, or exercise of a right under the statute and (iii) Plaintiff was prejudiced and suffered monetary injury. *See Gordon v. U.S. Capital Police*, 778 F.3d 158 (D.C. Cir. 2015)

51. As found by the OHR, Defendant interfered with Edwards' rights under the statute when they terminated Edwards on June 4, 2015, "based on a qualifying absence on June 3, 2015.[7]"

_____

[7] OHR probable cause finding pg. 12 of 15.

52. Defendant's acts caused Edwards to suffer economic losses, mental and emotional distress, physical injuries, embarrassment, humiliation and indignity.

53. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Edwards' statutory rights under the FMLA.

54. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including her attorney's fees.

### Count II. Retaliation Under the FMLA.

55. Plaintiff reincorporates by reference all the allegations above.

56. Under the FMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the FMLA.

57. In the present instance, the Plaintiff engaged in protected activity when she requested FMLA leave on June 3, 2015 from the Defendant.

58. Defendant denied her the benefits under the statute and terminated her on June 4, 2015 for "abandoning her position."

59. Because of the close proximity of the materially adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing a claim.

60. Defendants' acts caused Edwards to suffer economic losses, physical injuries, mental and emotional distress, embarrassment, humiliation and indignity.

61. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Edwards' statutory rights under the FMLA.

62. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the FMLA, including her attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Sonia Edwards prays as follows:

a. That this Court enter judgment against the Defendant Not For Profit Hospital Corporation d/b/a United Medical Center;

b. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, liquidated damages, reinstatement, compensatory and emotional damages for the financial and emotional harm caused by Defendants, including pre-judgment and post judgment interest and any other damages permitted in an amount of one million dollars ($1,000,000.00) and/or any other relief the Court deems fit That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees.

## VI.    JURY DEMAND

Plaintiff requests a jury trial on all her claims.

Respectfully Submitted,

/s/Arinderjit Dhali, Esq.
D.C. Bar No. 495909
Dhali PLLC
1828 L. Street. NW. Suite 600.
Washington D.C. 20001
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
***Attorney for Plaintiff Sonia Edwards***
*Saturday June 3, 2017*

 **Government of the District of Columbia**
Mayor Muriel E. Bowser

 **Office of Human Rights**
DISTRICT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202.727.4559 *tel*
202.727.9589 *fax*
ohr.dc.gov

## LETTER OF DETERMINATION

### *PROBABLE CAUSE FINDING – DCFMLA Interference*
### *NO PROBABLE CAUSE FINDING – DCFMLA Retaliation*

## Via Electronic Mail

Sonia Edwards
1508 Rollins Avenue                                          Exhibit A to Complaint
Capitol Heights, MD  20743
Ssedwards77@yahoo.com
*Complainant*

United Medical Center
c/o Seyfarth Shaw
Attn:  Charles Walters and Leslie Maffeo
975 F Street, NW
Washington, DC 20005
cwalters@seyfarth.com
*Respondent*

RE:    *Sonia Edwards v. United Medical Center*
       **OHR Docket No.: 15-798-P(N)**

Dear Parties:

The District of Columbia Office of Human Rights (OHR) has completed the investigation of the above referenced complaint.  Sonia Edwards is referred to as **"COMPLAINANT."**  United Medical Center, the employer for whom Complainant worked, is referred to as **"RESPONDENT."**

## ISSUES PRESENTED

Whether Respondent interfered with Complainant's right to job protected leave under the DC Family and Medical Leave Act (DCFMLA), when Respondent terminated Complainant's employment on June 4, 2015 after Complainant left work without approval on June 3, 2015, due to a serious medical issue.

Whether Respondent retaliated against Complainant for requesting DCFMLA forms on June 3, 2015, by terminating Complainant's employment on June 4, 2015.

## SUMMARY OF FINDINGS

OHR finds probable cause that Respondent interfered with Complainant's right to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015, based on an

absence on June 3, 2015, which was covered by the DCFMLA. Complainant left work due to a medical issue that Complainant's doctor determined required intermittent leave. The record indicates that Respondent terminated Complainant for leaving work without authorization; however, Respondent did not rescind this termination once Respondent became aware that the absence was due to a serious medical condition covered by the DCFMLA.

OHR finds no probable cause that Respondent retaliated against Complainant for requesting DCFMLA leave forms by terminating her employment on June 4, 2015. Respondent made the decision to terminate Complainant's employment on June 3, 2015, and had not yet received her request for DCFMLA leave.

## JURISDICTION

OHR has jurisdiction over complaints alleging discrimination under the DCFMLA that are brought to OHR within one year of the occurrence of an alleged discriminatory act. *See* 4 DCMR § § 1610.3. The complaint indicates that the earliest discriminatory act occurred on June 4, 2015.[1] The complaint was filed on June 15, 2015 within the statutory period.[2] The alleged discriminatory acts occurred while Complainant was employed with Respondent at 1310 Southern Avenue, S.E., Washington, DC 20032.

The District of Columbia Family & Medical Leave Act, D.C. Code §§ 32-501, *et seq.*, applies to employers who employ 20 or more employees in the District of Columbia. *See* 4 DCMR § 1601. The record indicates that Respondent has more than 20 employees. To be eligible for leave, Complainant must, at the relevant time, work for Respondent in the District of Columbia, have been employed for at least one year without a break in service during the preceding seven years, and have worked for Respondent for at least one thousand hours during the preceding twelve-month period. *See* §§ 1603.1-.2. The record indicates that Complainant worked in the District of Columbia and had the requisite tenure and hours, and that Respondent does not dispute threshold eligibility.

Accordingly, OHR has jurisdiction over Complainant's DCFMLA claims.

## SUMMARY OF INVESTIGATIONS

OHR's investigation included a review of: (1) Complainant's Charge of Discrimination; (2) Respondent's Position Statement; (3) Respondent's Responses to OHR's Requests for Information; (4) Complainant's Rebuttal and Interview; and (5) Witness Interviews.

### Complainant's Allegations[3]

Complainant alleges that on June 4, 2015, Complainant's doctor sent the Respondent completed paperwork for DCFMLA leave related to Complainant's medical condition.

---

[1] *See* Charge of Discrimination dated July 16, 2015 (OHR File at § II).

[2] *See* Complainant's Initial Written Complaint, dated June 15, 2015 (OHR File at § II).

[3] *See* Charge of Discrimination dated July 16, 2015 (OHR File at § II).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 3 of 15

Complainant returned to work the same day and met with Respondent's Executive Vice President of Human Resources (Vice President) to discuss Complainant's request for DCFMLA leave. However, at the meeting, Respondent did not address the DCFMLA request but informed Complainant of Respondent's decision to terminate Complainant's employment allegedly for walking off the job on June 3, 2015. Respondent had full knowledge of the medical reason Complainant departed from her job.

## Respondent's Position[4]

Respondent claims that Complainant was discharged after leaving work without permission and without clocking out. Respondent gave Complainant every opportunity to address and correct her longstanding performance and conduct problems, but she simply was unwilling to do so. Her request for DCFMLA leave appears to have been a last ditch effort to insulate herself from her own conduct underlying her termination.

Respondent has a policy allowing for up to sixteen weeks of medical leave in a twenty-four month period pursuant to the DCFMLA. The policy specifically sets forth that the leave may be taken continuously, intermittently, or on a reduced work schedule basis. The policy also sets forth the procedure for requesting such leave and the documentation required.

Complainant received a copy of these policies and signed an acknowledgment of their terms upon the commencement of her employment with Respondent.[5] Moreover, as a member of the Human Resources Department, Complainant was very familiar with these policies and the venues available for reporting any violations of these policies.

In December 2013, Complainant requested and was granted approximately five weeks of leave pursuant to the DCFMLA to recover from childbirth and bond with her newborn baby. At the conclusion of her leave, she returned to her prior job in the Hospital without incident.

Respondent first hired Complainant as a temporary employee in March 2010. On April 4, 2011, Complainant was hired as a full-time employee as a Human Resources Assistant II in the Human Resources Department. In this position, Complainant reported to the Vice President until March 16, 2015, when the Human Resources Manager (Manager) was hired and became Complainant's immediate supervisor. The Manager assumed supervision of the entire Department, other than Administrative Coordinator.[6]

Complainant had an extremely difficult time accepting the Manager's authority. She often responded to the Manager with hostility or ignored him. Additionally, the Manager became aware from talking to others in the Department that Complainant was often away from the Human Resources office without permission.

---

[4] *See* Position Statement dated October 7, 2015 (OHR File at § V).
[5] *See* Exhibit B (OHR File at § V).
[6]*See* Exhibit C (OHR File at § V). .

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 4 of 15

On June 3, 2015, the Manager called Complainant into his office to discuss keeping the various forms in the reception area of Human Resources stocked. Complainant responded, "Can't [a temporary employee in the Human Resources Department] do that?" The Manager explained that one person needed to be accountable for the forms, and because Complainant's desk was in that area, she was in the best position to notice when a particular form was low. Manager asked Complainant to sit down and she refused. Manager asked her if she realized that she worked for him. Her response was, "No, I work for [the Hospital!]," and the Manager then clarified, "Do you realize I am your supervisor? That you report to me?" and Complainant responded, "Well you don't own me! I'm not your slave!"

After leaving the Manager's office, Complainant took her lunch break; at the conclusion of her lunch break, rather than returning to work, Complainant went to the Hospital's Occupational Health office and reported that she was having an anxiety attack or panic attack as a result of her interaction with the Manager. Complainant was seen by a nurse, who spoke with Complainant briefly and then told her she should return to work and follow up with her primary care physician when she was able to do so. The nurse filled out a form listing that same day, June 3, 2015, as Complainant' return to work date.[7] The nurse did not tell Complainant to leave work for the day. Moreover, as a nurse, she did not have the authority to tell Complainant to leave for the day. Only a physician, physician assistant, or nurse practitioner is able to make that determination.

Complainant did not return to work, instead, Complainant returned to the Human Resources office and left a copy of the Occupational Health form in the inbox on the Manager's door and left a copy with the Administrative Coordinator (Coordinator) to give to the Vice President. Complainant did not inform anyone that she was leaving for the day; nor did Complainant clock out. Complainant simply left and did not return. Approximately thirty minutes later, the Manager realized Complainant had left the Hospital. The Manager reported this to the Vice President. Based on this incident and Complainant's work history, the Vice President made the decision to terminate Complainant as shown in an email correspondence between the Vice President and Manager.[8] The Vice President e-mailed Complainant to inquire if Complainant intended to come to work the next day and explained that she needed to follow up with Complainant regarding the events that occurred. The Vice President asked Complainant to come to her office when she got in or to let the Vice President know when she was available for a telephone call if Complainant did not intend on coming back to work.[9]

The next day, June 4, 2015, Complainant met with Vice President at approximately 2:30 PM, the Vice President informed Complainant that she was being terminated for leaving the day before. After their meeting, Respondent received a fax from Complainant's doctor requesting Complainant's be excused from work on June, 4, 2015 to June 7, 2015. The note did not provide a reason for the absence. Additionally, the fax included a certification of serious health condition stating that Complainant needed intermittent leave for four days per month for approximately one year for situational stress disorder.[10]    The certification lists June 4, 2015 as the

---

[7] *See* Exhibit E (OHR File at § V).
[8] *See* Exhibit F (OHR File at § V).
[9] *Id.*
[10] *See* Exhibit H (OHR File at § V).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 5 of 15

commencement of the condition. Complainant had not previously requested DCFMLA paperwork or otherwise informed anyone of her intention to seek DCFMLA leave. By the time the Vice President received the paperwork, the request was moot as Complainant had already been terminated.

## Complainant's Rebuttal[11]

Complainant went to the Occupational Health Department after suffering an anxiety attack that occurred when meeting with the Manager. Complainant called the Vice President while waiting to be seen at the Occupational Health Office to inform the Vice President that Complainant was having trouble breathing. Vice President responded, "Okay Sonia." Complainant provided the Manager a copy of the medical note and informed him that Complainant was dismissed to go home. The Manager did not respond or acknowledge Complainant. Complainant attempted to provide the Vice President a copy as well, but the Vice President's office door was closed because she was on a conference call. Complainant provided Coordinator a copy of Complainant's medical documentation.

Complainant also asked Coordinator for DCFMLA papers to take to Complainant's doctor's office. Coordinator responded that copies of the forms needed to be made. Complainant was still feeling the after-effects of the anxiety attack, and left before receiving any DCFMLA papers. Complainant forgot to clock out.

Complainant worked at Respondent for 5 years and Complainant never received any disciplinary action pertaining to Complainant's performance or behavior, nor was it addressed in Complainant's annual evaluations.

Complainant had no issue with the Manager's authority. Complainant states Manager started asking Complainant to do fraudulent activities in regards to processing new hires. These activities included completing background checks and verifying credentials. On numerous occasions, Complainant attempted to explain to the Manager the required steps to complete the hiring process per United Medical Center's regulations. Manager informed Complainant that he needed Complainant to bring the new hire candidates on board.

Complainant informed the Vice President as well as the Coordinator of what was occurring and nothing was done. On June 2, 2015, Complainant went to the Vice President's office to discuss why proper procedures were not in place. Complainant felt the Vice President and Manager were trying to hold her accountable for the processing of new hires. Complainant met with the CEO on June 3, 2015, to inform him of what was going on.

On June 3, 2015, the Manager asked Complainant to come into his office when Complainant was about to go to lunch to speak with Complainant about some of the Manager's concerns. During the meeting, the Manager became angry and screamed at the Complainant, "Do you not know you work for me?" After being released from the Manager's office Complainant went to lunch trying to gather herself, but became more upset. When it was almost time to return to the office

---

[11] *See* Letter dated October 28, 2015 (OHR File at § IV).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 6 of 15

Complainant started having difficulty breathing, Complainant was very nervous, and her heart was beating fast, so Complainant went to the Occupational Health office to see the nurse. The nurse advised Complainant to sit down, take a deep breath, and to relax. The nurse provided Complainant with a medical note,[12] and advised Complainant to go home and follow up with her doctor. At no point did she say return to work.

Complainant returned to the Human Resources office, made two copies of the medical note, and then went to the Manager's office to inform him that Complainant was sent home for the day, the Manager did not acknowledge Complainant, so Complainant placed the note in his box on his door. Complainant also provided a copy to the Coordinator because the Vice-President's door was closed. Complainant asked the Coordinator for the DCFMLA paperwork, but the Coordinator had to make copies. So Complainant left to go home and scheduled a follow up appointment with her doctor for June 4, 2015.

The next day, Complainant received an email from the Vice President asking to speak with Complainant in regards to the incident. Complainant never walked off Complainant's job the entire time of working at Respondent's facility without permission from a higher authority. The nurse has sent Complainant home before due to medical issues, and it was never an issue with Complainant's supervisor. Complainant also reached out to the Coordinator on June 4th, trying to reach the Vice President, and she informed Complainant that she would not be available until later.

When Complainant arrived at the office on June 4, 2015, Complainant met with the Chief Compliance Officer to discuss how Complainant had been harassed, and how Complainant felt she was being set up to take the blame for the Manager's instructions. The Chief Compliance Officer stated he would look into the matters and informed Complainant that he would have to discuss these issues with CEO.

Complainant never received DCFMLA papers from Respondent, but received them from Complainant's doctor, who had the standard DCFMLA documents. On numerous times since the Manager started in the department, Complainant reached out to the Vice President to complain about the Manager's harassing behavior. This included questioning Complainant about going to the restroom, following Complainant throughout the building to see what and where Complainant was going, and questioning if phone calls were personal. Complainant felt her termination was pre-planned because Respondent knew Complainant was having some medical issues, and everyone in the office was aware. Complainant provided documentation and asked the Office Administrator for the DCFMLA documents.

## List of Documents

OHR reviewed and considered the following documents provided by Complainant:[13]

    A. Complainant's Affidavit

---

[12] *See* Certification of Medical Care (OHR File at § IV).
[13] *See* OHR File at § IV.

*Sonia Edwards v. United Medical Center*
**Docket No.: 15-798-P(N)**
Page 7 of 15

B. Complainant's Rebuttal
C. Termination Policy
D. Leave Under DCFMLA Policy
E. Email thread, beginning April 29, 2015, authored by Complainant
F. Email dated April 24, 2015, authored by Complainant
G. Email dated April 30, 2015, authored by the Executive Vice President of Human Resources
H. Termination Clearance Policy
I. Doctor's note, dated June 4, 2015.
J. Certification of Health Care Provider for Employee's Serious Health Condition, dated June, 4, 2015
K. Occupational Health, Certification Medical Care, dated June 3, 2015

OHR reviewed and considered the following documents provided by Respondent:[14]

A. Position Statement
B. EEO Policy
C. Leave Under DCFMLA Policy
D. Receipt of Employee Handbook
E. Email dated March 17, 2015, authored by the Executive Vice President of Human Resources
F. Email Thread dated April 30, 2015, authored by Executive Vice President of Human Resources
G. Occupational Health, Certification Medical Care, dated June 3, 2015
H. Email dated June 3, 2015, authored by the Executive Vice President of Human Resources
I. Fax cover sheet, dated June 5, 2015, from Complainant's physician
J. Doctor's note, dated June 4, 2015.
K. Certification of Health Care Provider for Employee's Serious Health Condition, dated June 4, 2015
L. List of terminated employees during relevant period

**Documents Summary**

*Complainant Documents*
Complainant submitted email conversations with Vice President beginning on April 24, 2015. In the email dated April 24, 2015, Complainant stated Manager was unaware of his duties. On April 29, 2015, Complainant again levied a complaint against Manager, claiming he was rude when speaking to Complainant.

Complainant provided a completed Certification of Health Care Provider for Employee's Serious Health Condition signed by Complainant's physician dated June 4, 2015. This form indicates that Complainant suffers from situational distress disorder and required intermittent leave four

---

[14] *See* OHR File at § V.

days per month. The certification also shows Complainant's condition requires follow-up treatments or reduced work schedule, could lead to episodic flare-ups, and last for 6-12 months.[15]

Complainant presented the Certification of Medical Care from Occupational Health dated June 3, 2015.[16]

*Respondent Documents*
Respondent provided a list of involuntary terminations spanning from June 4, 2014 to June 4, 2015. This list reveals out of the 55 employees terminated, 14 employees were terminated for job abandonment.

Respondent presented an email dated June 3, 2015, written by Vice President and addressed to Manager, stating she intended to terminate Complainant's employment the next day. In a separate email, also dated June 3, 2015, Vice President informed Complainant she was aware that Complainant left work without permission, and she needed to speak to Complainant the next day.

Respondent submitted a fax cover sheet it received from Complainant's physician. The fax was dated June 5, 2015, and included the Doctor's note and Certification of Health Care Provider for Employee's Serious Health Condition, both dated June 4, 2015. The doctor's note indicated Complainant was unable to work between June 3, 2015 and June 7, 2015, and the medical certification indicated "situational stress disorder" necessitated intermittent leave.

**Witness Statements**
OHR obtained and considered the following witness statements:[17]

*Complainant*

Complainant explained that even though the nurse's note indicated Complainant could go back to work, the nurse verbally told Complainant to go home. Complainant states that on June 3, 2015, there were no DCFMLA forms in the requisite forms box in the office.

*Witness One, Executive Vice President of Human Resources*
The Executive Vice President of Human Resources was the decision maker in Complainant's employment termination, and states that Complainant received verbal communications regarding her performance and discipline. The Witness further states that overall, Complainant performed at a level of needing improvement. The Witness states the goal of Respondent is to coach employees who have performance issues, and give them an opportunity to improve rather than always taking punitive measures. In regards to Complainant's termination, the witness states

---

[15] Respondent also submitted the same Certification of Health Care Provider.
[16] OHR notes that the meaning of the certification is ambiguous. The note states "They may return to work/ school approximately on 6-3-15," however, Director, made an additional note which reads "To see PCP." Therefore it is unclear whether certification indicates for Complainant to go back to work, or to leave to see her primary care physician.
[17] *See* OHR File at § III.

that Complainant was terminated for not following hospital protocol, when she left the premises without informing a supervisor or clocking out. At the time the decision was made to terminate Complainant, the Witness was not aware of a request or intent by Complainant to exercise rights under the DCFMLA, nor was DCFMLA a factor in the decision to terminate Complainant's employment.

### Witness Two, Former Chief Compliance Officer
The Former Chief Compliance Officer is no longer an employee of Respondent. The Witness states that he was to be consulted in regards to Complainant's termination. The Witness further states when an individual is terminated after there was an issue of whistleblowing, as the Compliance Officer, the Witness should have been consulted. The Witness states that Complainant qualified as a whistleblower. The Witness states he believed Complainant was terminated wrongfully.

### Witness Three, Director of Occupational Health
The Director of Occupational Health states on June 3, 2015, she interviewed, accessed, and advised Complainant to make an appointment with her personal physician right away. The Witness states that she issued Complainant a "Return to Duty/Go Home" slip. The Witness further states that Complainant was to seek an appointment with her physician as soon as possible; if she was able to get an appointment that day, she should inform her manager, and go see her doctor. However, if she was unable to see her doctor that day, Witness informed Complainant to return to work.

### Witness Four, Human Resource Coordinator
The Human Resource Coordinator states Complainant gave her a form to give to the Executive Vice President of Human Resources, which she did. The Witness states that Complainant did request DCFMLA paperwork on June 3, 2015; however, when the Witness went to retrieve the paperwork and returned, Complainant was gone. The Witness states that she was not aware that Complainant was leaving work. The Witness states Complainant still had access to DCFMLA paperwork, as it's provided on Respondent's computer system, and as a member of Human Resources, Complainant had access to the human resources folder, which is computer based and also a physical file. The Witness further states that other employees, including Complainant have taken leave under the DCFMLA, and was not terminated in retaliation for taking such leave.

**Comparator Data**
A review of a list of involuntary terminations from the period of June 4, 2014 – June 4, 2015, reveals that 55 employees were terminated for various reasons. Of the 55 employees, 14 employees were terminated for job abandonment, which was the violation Complainant was terminated for.[18]

---

[18] *See* Exhibit E (OHR File at § V).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page **10** of **15**

## LEGAL ANALYSIS

## DC FAMILY AND MEDICAL LEAVE ACT

### Coverage and Types of Claims

The District of Columbia Family & Medical Leave Act, D.C. Code §§ 32-501, *et seq.*, applies to employers who employ 20 or more employees in the District of Columbia. *See* 4 DCMR § 1601.

Under the DCFMLA, a qualified employee is entitled to sixteen (16) weeks of family leave during a twenty-four (24) month period[19] for: "(1) [t]he birth of a child of the employee; (2) [t]he placement of a child with the employee for adoption or foster care; (3) [t]he placement of a child with the employee for whom the employee permanently assumes and discharges parental responsibility; or (4) [t]he care of a family member[20] of the employee who has a serious health condition." D.C. Code § 32-502 (a). A qualified employee is also entitled to sixteen (16) weeks of medical leave during a twenty-four (24) month period when the employee is unable to perform the functions of his or her position because of a serious health condition. *Id.* at § 32-503 (a).[21] The DCFMLA also provides certain protections to an employee while he or she is out on medical or family leave. For example, an employee is entitled to maintenance of health insurance benefits while out on leave, to be restored to the same or an equivalent position upon returning from leave, and seniority or other benefits accrued prior to commencing leave. *See* D.C. Code §§ 32-505 (a), (b), and (d).

There are two types of claims under the DCFMLA—interference and retaliation. *See* D.C. Code § 32–507(a) (interference); § 32–507(b)(1) (retaliation); *see also Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075 (D.C. 2008) ("Like its federal counterpart, the DCFMLA recognizes two theories for recovery-'the retaliation or discrimination theory and the entitlement or interference theory'")(internal citation omitted); *see also Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 328 (D.C. 2004)(seminal case in which the Court of Appeals held that, in addition to the statutory provision of job-protected leave, the makes it "unlawful to terminate an employee because that employee has taken protected family or medical leave.").

---

[19] The 24-month period may be counted based on a) calendar year, b) any fixed twelve-month period, c) a period measured forward from the date of first use of DCFMLA leave, or d) measured backward from the date the employee uses or would use DCFMLA leave, but the method must be uniformly applied to all employees and notice must be given. *See* 4 DCMR § 1616.1-.2. D.C. government agencies must use the third method. *See id.* at § 1616.3

[20] A family member includes any blood relation, child by legal custody, spouse, foster child, a child who lives with the employee for whom the employee discharges parental responsibility, or a person with whom the employee shares or shared within the past year a mutual residence and with whom the employee maintains a committed relationship. *See* 4 DCMR § 1699.1.

[21] The statute defines a "serious health condition" as, "a physical or mental illness, injury, or impairment, that involves: (A) Inpatient care in a hospital, hospice, or residential health care facility; or (B) Continuing treatment or supervision at home by a health care provider or other competent individual." *Id.* at § 32–501(9).

## DCFMLA Interference

It is unlawful under the DCFMLA for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by the DCFMLA. *See* D.C. Code § 32-507(a). The elements of a *prima facie* claim of interference are generally as follows: 1) Complainant is eligible for DCFMLA benefits, 2) Respondent interfered with, restricted, or denied Complainant's exercise of a right or attempt to exercise a right provided by statute, and 3) Complainant was prejudiced thereby. *See Hamilton v. Howard Univ.,* 960 A.2d 308, 317 (D.C. 2008) (Court of appeals reciting the pertinent regulatory eligibility requirements and requisite entitlements); *see also Gordon v. U.S. Capitol Police,* 778 F.3d 158, 164 (D.C. Cir. 2015) (elucidating generally the *prima facie* elements of an interference claim under comparable federal statute).[22]

First Element - Eligibility

An employee who works for a covered employer is eligible for DCFMLA benefits, when: the employee has accrued at least one year of service, worked 1,000 hours or more during the 12-month period immediately preceding the leave request, he or she requires leave for a purpose covered by the statute, and he or she has provided sufficient information to the employer of his or her need for covered leave. *See* 4 DCMR §§ 1601.1-.6 (covered employers); § 1603.1-.2 (required tenure and hours); § 1605.2 (serious health condition); §1606.1 (qualifying reasons to care for a family member or the birth or placement of a child); §1614.1 (employee is required to provide reasonable notice of need to make use of leave); § 1614.7 (employer may be required to permit DCFMLA leave even without a direct request for DCFMLA leave). *See also* D.C. Code § 32-501 (defining an eligible employee).

Second Element - Interference

An employer not only interferes with a right under the DCFMLA by denying the employee a right or benefit he or she is entitled to, but also by taking an action that has a reasonable tendency to interfere with an employee's exercise of DCFMLA rights. *See Gordon v. U.S. Capitol Police,* 778 F.3d 158, 164-66 (D.C. Cir. 2015) (finding a valid claim of interference where an employer expressed hostility towards Complainant's use of FMLA leave to discourage the employee from making use of leave.). For example, taking an adverse employment action against an employee who has inquired about, requested, or used DCFMLA protected leave could constitute interference if it affects access to future benefits. *See generally* 4 DCMR § 1621.1.

---

[22] The D.C. Family and Medical Leave Act (DCFMLA) was intended to address many of the same policy concerns as its federal counterpart, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654 (2000). Although the DCFMLA provides for broader coverage than the FMLA, the acts are substantially similar, and the D.C. Court of Appeals has looked to its federal counterpart, to assist in interpreting the prohibited acts under the DCFMLA. *See Hamilton v. Howard Univ.,* 960 A.2d 308, 317 (D.C. 2008). Accordingly, while the OHR is not bound by the legal decisions interpreting the federal statute, those decisions may be considered persuasive authority. *See Lenaerts v. District of Columbia Dept. of Employment Svs.,* 545 A.2d 1234, 1238 (D.C. 1988); *see also Chang v. Inst. For Public-Private P-ships, Inc.,* 846 A.2d 318 (D.C. 2004) (asserting a D.C. Court of Appeals opinion that the federal FMLA is used to interpret the DCFMLA).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 12 of 15

Third Element - Prejudice

An employee is prejudiced or harmed where the "employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Roseboro v. Billington*, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).

***OHR finds probable cause that Respondent interfered with Complainant's right to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015.***

The record establishes a *prima facie* claim of interference under the DCFMLA.

First, the record indicates that the Complainant suffers from a chronic serious health condition, and thus, is eligible for DCFMLA. Complainant's doctor submitted a fax dated June 5, 2015 to Respondent, containing documents indicating that Complainant suffered from situational stress disorder and required intermittent leave beginning on June 3, 2015. The medical leave form indicates Complainant's condition would require monthly follow up appointments for treatment, last an extended period of time (6-12 months), and could potentially lead to episodic flare-ups. Therefore, this medical condition classifies as a chronic serious health condition under the DCFMLA.[23]

Second, the record establishes that Respondent interfered with Complainant's right to exercise DCFMLA by terminating Complainant's employment on June 4, 2015, based on a qualifying absence on June 3, 2015. Due to her termination, Complainant was unable to exercise DCFMLA leave for which she was eligible.

Third, the record indicates that Complainant suffered prejudice when Respondent ended Complainant's employment. While the record supports Respondent's position that it decided to terminate Complainant's employment because Complainant left work without authorization, Respondent was effectively put on notice that Complainant's departure from work was due to a medical issue when it received medical leave documents from Complainant's physician. Under DCFMLA, if leave is unforeseeable, an employee must only notify their employer as soon as practicable.[24] Complainant was prejudiced when Respondent did not reinstate Complainant after learning that Complainant's departure on June 3, 2015 was related to a medical condition, and thereby constituted protected leave under the DCFMLA.

Accordingly, there exists sufficient evidence to proceed to a hearing on this issue.

## DCFMLA Retaliation

Retaliation is unlawful under the DCFMLA. *See* D.C. Code § 32–507(b)(1); *Chang v. Instit. for Public-Private Partnerships, Inc.*, 846 A.2d 318, 328-29 (D.C. 2004); *see also Alford v.*

---

[23] *See* 4 DCMR § 1605.3(c).
[24] *See* 4 DCMR § 1614.3.

*Providence Hosp.*, 945 F.Supp.2d 98, 108 (D.D.C. 2013). The elements of a *prima facie* case of retaliation under the DCFMLA are: (1) Complainant engaged in a protected activity; (2) the employer took an adverse employment action; and (3) there was a causal connection between the two. *Chang*, 846 at 329-30.

<u>First Element - Protected Activity</u>

An employee engages in protected activity by exercising a right protected by the DCFMLA, including requesting or taking DCFMLA leave, or by opposing a practice made unlawful by the statute. *Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 329 (D.C. 2004) (finding that making use of DCFMLA leave is a protected activity); *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009).

<u>Second Element - Adverse Action</u>

An adverse employment action is an act that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Joyce v. Office of Architect of Capitol*, 966 F. Supp. 2d 15, 23 (D.D.C. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). *See also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) (opining that an adverse action could also be an action that results in prejudice to the employee).

<u>Third Element - Casual Connection</u>

"An employee can establish a causal connection by showing that the protected activity and the adverse action were not *wholly unrelated.*" *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009) (internal citations omitted). Close temporal proximity between the protected activity and the adverse action is one way of establishing a causal connection. *Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 329 (D.C. 2004).

***OHR finds no probable cause that Respondent retaliated against Complainant for engaging in protected activity on June 3, 2015, by terminating her employment on June 4, 2015.***

The record does not reasonably support a *prima facie* claim of retaliation under the DCFMLA.

First, Complainant engaged in a protected activity when she requested DCFMLA forms, thus the first element is reasonably supported. The second of element is also reasonably supported as Respondent took an adverse employment action against Complainant by terminating her employment on June 4, 2015.

However, the third element is not reasonably supported, as there exists no casual connection between Complainant's protected activity and the adverse action. Respondent's decision to terminate Complainant's employment occurred before Respondent was aware of Complainant's intent or request for DCFMLA leave. The decision to terminate Complainant's employment was made on June 3, 2015. Although Complainant claims she asked Human Resource Coordinator for DCFMLA forms, there is no evidence the decision-maker, the Vice President, was are of this request. An email correspondence between the Vice-President and Manager time-stamped June

3, 2015 at 4:34 PM, corroborates this fact.[25]  Respondent did not learn of Complainant's intent to seek DCFMLA until June 4, 2015, when Respondent received a fax from Complainant's doctor. Therefore, Respondent could not have retaliated against the Complainant's desire to seek DCFMLA leave, because Respondent had already decided to terminate Complaint's employment based on her behavior on June 3, 2015.

Ultimately, however, as explicated above, the lack of a reasonable claim of retaliation does not obviate OHR's finding of probable cause that Respondent interfered with Complainant's DCFMLA rights.  Especially when, after learning that Complainant's unauthorized absence was likely due to a serious medical condition, Respondent did not afford Complainant with DCFMLA job-protected leave for that absence.

### DETERMINATION

For the foregoing reasons, the OHR finds:

**PROBABLE CAUSE** to believe that Respondent interfered with Complainant's rights to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015.

**NO PROBABLE CAUSE** to believe that Respondent retaliated against Complainant after she engaged in protected activity on June 3, 2015, by terminating her employment on June 4, 2015.

*IT IS SO ORDERED.*

### ASSIGNMENT TO A HEARING EXAMINER AFTER A FINDING OF PROBABLE CAUSE

Probable cause having been found, this matter will be assigned to a hearing examiner, pursuant to 4 DCMR § 1622.9.  At Respondent's election, the parties may first attempt conciliation by contacting Eloisa Rocha at eloisa.rocha@dc.gov.  The hearing is *de novo*, includes discovery, pre-hearing statements, and testimony.  *See* 4 DCMR §§ 1623.1, *et seq*.  The hearing examiner will prepare a recommended finding for the Director's consideration, and the Director will issue a final order on the merits.  § 1625.

### DCFMLA REQUEST FOR RECONSIDERATION AND PETITION FOR REVIEW

Complainant may request reconsideration of a no cause finding **within 15 calendar days from the following date:** _4/26/17_____, by submitting a written request to the Director at ohr.ogc@dc.gov.  The request is not to exceed ten pages.  The request must be based on misapplication of law, misstatement of material fact, or newly discovered evidence.  4 DCMR § 1625.4.  A party may appeal a final decision under the DCFMLA by filing a petition for review

---

[25] *See* Exhibit F (OHR File at § V).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 15 of 15

with the Superior Court within 30 days of service of notice of the final decision.  4 DCMR §
1625.15.

Sincerely,

Date:  Y-24-17

Mónica Palacio, Director
District of Columbia Office of Human Rights


Cc:

      Michael Andrews
      OHR Investigations Supervisor
      Michael.andrews2@dc.gov

      Albert Santiago
      OHR Mediation Manager
      Albert.santiago@dc.gov



**Superior Court of the District of Columbia**
CIVIL DIVISION
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Sonia Edwards

_____
Plaintiff

vs.                                          Case Number   __2017 CA 003917 B__

Not for Profit Hospital Corporation d/b/a United Medical Center

_____
Defendant

**SUMMONS**

To the above named Defendant:    Luis Hernandez, Chief Operating Officer

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service.  If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer.  A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you.  The attorney's name and address appear below.  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

A.J Dhali, Esq. Dhali PLLC
_____           _Clerk of the Court_
Name of Plaintiff's Attorney
1828 L. Street. NW. Suite 600
_____     By _____
Address   Washington D.C. 20036                              Deputy Clerk
_____
202-556-1285. E:ajdhali@dhalilaw.com           Date  06/07/2017
_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሱ

IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT.  IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

## INFORMATION SHEET

Sonia Edwards

Case Number: __2017 CA 003917 B__

vs

Date: __Saturday 6/3-2017__

Not For Profit Hospital Corp

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Arinderjit (A.J) Dhali | **Relationship to Lawsuit** |
| Firm Name: Dhali PLLC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.: 202-556-1285    Six digit Unified Bar No.: 495909 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury
Demand: $ 1,000,000.00    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge:_____ Calendar#:_____
There is a related case in Federal District Court for DC, No.16-cv-01546

NATURE OF SUIT:    *(Check One Box Only)*

## A. CONTRACTS

**COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
   Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
   Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ A.J Dhali
_____
Attorney's Signature

Saturday June 3, 2017
_____
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

SONIA EDWARDS
    Vs.                                    C.A. No.      2017 CA 003917 B
NOT FOR PROFIT HOSPITAL CORPORATION

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                          Chief Judge Robert E. Morin

Case Assigned to: Judge BRIAN F HOLEMAN
Date: June 7, 2017
Initial Conference: 9:30 am, Friday, September 01, 2017
Location: Courtroom 214
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin

Caio.doc