IN THE UNITED STATES DISTRICT COURT
WASHINGTON D.C.
CIVIL DIVISION

Exhibit 1

| | |
|---|---|
| **Sonia Edwards** | ) |
| **1508 Rollins Ave** | ) |
| **Capital Heights, MD 20743** | ) |
| **Plaintiff,** | ) **Case No 17-cv-01515** |
| | ) |
| **vs.** | ) Jury Demand |
| **Not-For Profit Hospital Corporation d/b/a** | ) For Violations of the Family Medical Leave |
| **United Medical Center** | ) Act |
| **1310 Southern Ave. SE** | ) **1st Amended Complaint** |
| **Washington D.C. 200012** | |
| **Defendant.** | |

### Introduction

Plaintiff Sonia Edwards by and through her undersigned counsel Dhali PLLC timely file this First Amended Complaint (FAC) against the Defendant, Not-For Profit Hospital Corporation (NFPHC), under F.R.C.P. Rule 15 (a), or within 21 days[1] of the Defendant's 12(b)(6) motion to dismiss. It is an amendment as a matter of course for violations of the Family Medical Leave Act when NFPHC, terminated Edwards on June 4, 2015 while she was on family medical leave (FMLA). Plaintiff may also have claims under the National Defense Authorization Act (NDAA) and the Whistleblower protection laws, which counsel for the plaintiff is still exploring. To that end, NFPHC are being placed on notice of these additional allegations, and once confirmed the plaintiff intends to amend this present complaint to purse these additional claims[2].

### I.    PARTIES

---

[1] The Defendant's Motion to Dismiss was filed on Thursday August 3, 2017 [Dkt N0. 4].
[2] Some of the allegations in this complaint are also related to the pending action at the United States Federal District Court for the District of Columbia, in the matter of *John Lott v. NFPHC*, Case No. 16-cv-01546. .

1. Sonia Edwards was employed by the Defendant NFPHC from March 2010 to June 4, 2015. At the time of her termination she was employed as a Human Resource Assistant, earning approximately $40,000 per year. She is an employee under 29 U.S.C § 2611 *et.seq.,* of the FMLA.

2. The Defendant Not-for-Profit Hospital Corporation d/b/a/ United Medical Center (UMC) is a D.C. government hospital, offering community-based professional healthcare services to the residents of Ward 7, Ward 8 and bordering Prince George's County communities. UMC was formed under D.C. Code Chapter 9A § 44-951.02 *et seq.* It is an employer 29 U.S.C. § 2611 *et.seq.,* of the FMLA.

## II.      JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over her FMLA claim under 29 U.S.C. § 2611. *et.seq.*

4. Venue is proper in the District because the Plaintiff worked in the District, was terminated in the District and all the events in this action occurred in the District. All the records concerning the allegations are also in the District.

## III.      EXHAUSATION OF ADMINISTRATIVE REMEDIES

5. On June 15, 2015, Edwards filed a formal complaint with the D.C. Office of Human Rights. (OHR) alleging violations of the FMLA.

6. On April 24, 2017, the OHR issued a probable cause finding for an interference claim under the FMLA, OHR Docket Number 15-798-(P)(N). (Exhibit <u>A</u>)

7. Edwards has no further administrative obligations.

8. There are no exhaustion requirements under the FMLA.

DHALI PLLC

# IV.   STATEMENT OF FACTS[3]

9.  The Not for Profit Hospital Corporation d/b/a United Medical Center (NFPHC) first hired Edwards as a temporary employee on March 2010. On April 2011, she was hired as a full time employee as a Human Resources Assistant II in the HR Department. She reported to the VP until March 16, 2015, and later to the HR Manager.

10. At the time of Plaintiff's termination, Plaintiff was eligible to obtain FMLA leave under 29 C.F.R. § 825.110.

11. NFPHC is a recipient of federal dollars and to that end, receives money from the U.S. Department of Health and Human Services for operating a fully credentialed and authorized medical facility in the District of Columbia.

12. NFPHC is also presently under investigation by the federal government for overbilling for Medicare services. [4]

13. To the best of Plaintiff's knowledge, for the duration of her employment, there are no contemporaneous written documents or records of her underperformance as an employee at NFPHC.

14. While she was employed, Edwards alleges that she was being told by her manager to engage in illegal and fraudulent activities including but not limited to hiring individuals and nurses who had yet to receive their nursing credentials.

---

[3] The Statement of Facts are from the probable cause finding issued by the OHR dated April 24, 2017.

[4] "D.C. Troubled United Medical Center May Need A Tax Payer Bailout Again." https://www.washingtonpost.com/local/dc-politics/dcs-troubled-united-medical-center-may-need-a-taxpayer-bailout--again/2017/05/01/aeb9d2ca-2c26-11e7-be51-b3fc6ff7faee_story.html?utm_term=.b92a28c7c74c (last visited June 3, 2017)

15. On April 24, 2015, Edwards also complained to HR about harassment and that her manager had followed her to the washroom and waited outside[5].

16. As a recipient of federal aid hiring individuals who were not properly credentialed is a violation of federal laws and could jeopardize its federal funding.

17. On June 2, 2015, Edwards informed the VP of these illegal practices. Edwards felt that she was being blamed for the illegal hires. Edwards also met with the CEO David Small on June 3, 2015 to inform him of the illegal billing practices.

18. On June 3, 2015, her manager asked her to come to his office. During this meeting, her manager yelled at Edwards, saying, "Do you not know that you work for me!?"

19. Edwards experienced an anxiety attack and/or started having difficulty breathing. She was nervous and her heart was beating fast. Since she was working at a hospital, she went to the Occupational Health Office (OHO) to see a nurse.

20. While at the Occupational Health Office, Edwards calls the VP and informs him, that "I am having trouble breathing." He says, "Ok Sonia." At the Occupational Health Office, Edwards was seen by the Director of OHO Mary Quirk. Quirk informs Edwards to: to sit down, relax and take a deep breath. Quirk also told Edwards, " to call her doctor and see him right away.[6]"

21. Quirk/and or OHO also provided Edwards with a note asking Edwards to return to work *or,* make an appointment with her physician.

---

[5] ¶24 of the First Amended Complaint (FAC) in the matter of *Lott v. NFPHC*, Case No. Case No. 16-cv-01546 [Dkt No. 18]
[6] OHR Investigative File; Statement from Mary Quirk.

DHALI PLLC

**June 3, 2015: Notice of Medical Leave to Employer**

22. Edwards then went to the HR office, she made two copies of the medical note and went to the Manager's office that she was being sent home for the day to visit her physician. The manager did not acknowledge Edwards. Edwards thus left the note in his "box on his door."[7]

23. In the investigation of witnesses by OHR, the VP of HR Jackie Johnson, also acknowledges receiving this note on June 3, 2015.

24. Edwards also provided a copy of the note to the HR coordinator and Edwards asked for FMLA paperwork.

25. Edwards scheduled a fellow up appointment with her medical provider for June 4, 2015, with Peter Swaby, M.D.

26. Dr. Swaby diagnosed Edwards with "situational stress disorder" and that she was to be on intermittent medical leave beginning on June 3, 2015. Her condition required "monthly follow up appointments for treatment, last an extended period of time (6-12 months) and could potentially lead to episodic flare-ups.[8]"

27. On June 4, 2015, the Chief Compliance Officer John Lott is advised that Edwards filed a harassment claim against HR manager Eric Johnson. He is forwarded Edwards' email to EVP Jackie Johnson, detailing the harassment.

**2nd Notice of Medical Leave by Defendant.**

28. Also on June 4, 2015, Edwards visits the Chief Compliance Officer Lott on this day and informs him that because of the harassment from her supervisor, she visited

---

[7] OHR probable cause finding pg. 6 of 15
[8] Id at pg. 12 of 15

"Occupational Health" on June 3, 2015 who referred her to her primary care physician (PCP). Edwards also advised Lott that she was on FMLA as per the recommendations of Dr. Swaby. Lott informed Edwards that he will speak about her issue with the CEO David Small. A few hours later, Lott learns that Edwards was terminated for "job abandonment" while being on FMLA.

29. On June 4, 2105, Edwards is then terminated by the Vice President on the grounds that she had "abandoned her position" and walked off the job site.

30. The OHR in its probable cause finding held that, "*the record establishes that Respondent [NFPHC] interfered with Complainant's [Edwards] right to exercise DCFMLA by terminating Complainant's employment on June 4, 2015, based on a qualifying absence on June 3, 2015. Due to her termination, Complainant was unable to exercise DCFMLA leave for which she was eligible.*"[9]

31. On June 8, 2015, Lott meets with the CEO to discuss the termination of Edwards and that it maybe afoul of the FMLA, the D.C. FMLA & DCHRA laws. Lott also informs the CEO that NFPHC <u>has an obligation to be in compliance with the laws</u> and that they <u>cannot terminate individuals who are on FMLA</u> or make complaints of harassment under the DCHRA.

**FRE 801(d)(2)(D) Admission by a Party Opponent of Edwards' Unlawful Termination**

32. Also on June 8, 2015, CEO David Small <u>admitted </u>to Lott that Edwards' termination may have been unlawful and instructed Lott to contact HR to reinstate her and to promote her "*upward and outward*."

---

[9] OHR probable cause finding, pg. 12 of 15

33. Subsequently, or on or about June 9, 2015, Lott speaks with the EVP of HR and asks to rescind her decision to terminate Edwards. She refuses and says she won't do it because "Sonia is nasty and has to stay gone".

34. As of the date of this complaint, Edwards remains terminated by the Defendant.

35. On April 27, 2017, the District of Columbia Office of Human Rights issued a probable cause finding and that NFPHC had violated the DCFMLA when it terminated Edwards on June 4, 2015.

### Count I. Interference Under the FMLA

36. Plaintiff incorporates by reference all the allegations above.

37. The federal Family Medical Leave Act (FMLA) provides an eligible employee for a total of twelve (12) workweeks of medical leave during any twelve (12) month period when the employee becomes unable to perform the functions of her job.

38. In order to prevail on her FMLA claim, Edwards must show that she was (i) eligible for FMLA benefits; (ii) Defendant interfered with, restricted or denied Plaintiff's leave, or exercise of a right under the statute and (iii) Plaintiff was prejudiced and suffered monetary injury. *See Gordon v. U.S. Capital Police*, 778 F.3d 158 (D.C. Cir. 2015)

39. As found by the OHR, Defendant interfered with Edwards' rights under the statute when they terminated Edwards on June 4, 2015, "based on a qualifying absence on June 3, 2015.[10]"

40. Defendant's acts caused Edwards to suffer economic losses, mental and emotional distress, physical injuries, embarrassment, humiliation and indignity.

---

[10] OHR probable cause finding pg. 12 of 15.

DHALI PLLC

41. This intentional, reckless, and/or willful act by the part of Defendant's constitutes a violation of Edwards' statutory rights under the FMLA.

42. By reason of Defendant's actions, the Plaintiff is entitled to all legal, and/or equitable remedies under the FMLA, including her attorney's fees.

### Count II. Retaliation Under the FMLA.

43. Plaintiff reincorporates by reference all the allegations above.

44. Under the FMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the FMLA.

45. In the present instance, the Plaintiff engaged in protected activity when she requested FMLA leave on June 3, 2015 from the Defendant.

46. Defendant's had notice of her medical leave on June 3, 2015 and again on June 4, 2015.

47. Defendant denied her the benefits under the statute and terminated her on June 4, 2015 for "abandoning her position."

48. Because of the close proximity of the materially adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing a claim.

49. Defendants' acts caused Edwards to suffer economic losses, physical injuries, mental and emotional distress, embarrassment, humiliation and indignity.

50. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Edwards' statutory rights under the FMLA.

DHALI PLLC

51. By reason of Defendants actions, the Plaintiff is entitled to all legal, and liquidated remedies under the FMLA, including her attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Sonia Edwards prays as follows:

a. That this Court enter judgment against the Defendant Not For Profit Hospital Corporation d/b/a United Medical Center;

b. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits, liquidated damages, reinstatement, compensatory damages for the harm caused by Defendants, including pre-judgment and post judgment interest and any other damages permitted in an amount of one million dollars ($1,000,000.00) and/or any other relief the Court deems fit

That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees.

## V.      JURY DEMAND

Plaintiff requests a jury trial on all her claims.

Respectfully Submitted,

/s/Arinderjit Dhali, Esq.
D.C. Bar No. 495909
Dhali PLLC
1828 L. Street. NW. Suite 600.
Washington D.C. 20001
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
***Attorney for Plaintiff Sonia Edwards***

*August 21, 2017*

DHALI PLLC

 Government of the District of Columbia
Mayor Muriel E. Bowser


**Office of Human Rights**
DISTRICT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202.727.4559 *tel*
202.727.9589 *fax*
ohr.dc.gov

### LETTER OF DETERMINATION

*PROBABLE CAUSE FINDING – DCFMLA Interference*
*NO PROBABLE CAUSE FINDING – DCFMLA Retaliation*

## Via Electronic Mail

Sonia Edwards
1508 Rollins Avenue
Capitol Heights, MD 20743
Ssedwards77@yahoo.com
*Complainant*

Exhibit A to Complaint

United Medical Center
c/o Seyfarth Shaw
Attn: Charles Walters and Leslie Maffeo
975 F Street, NW
Washington, DC 20005
cwalters@seyfarth.com
*Respondent*

### RE: *Sonia Edwards v. United Medical Center*
**OHR Docket No.: 15-798-P(N)**

Dear Parties:

The District of Columbia Office of Human Rights (OHR) has completed the investigation of the above referenced complaint. Sonia Edwards is referred to as **"COMPLAINANT."** United Medical Center, the employer for whom Complainant worked, is referred to as **"RESPONDENT."**

## ISSUES PRESENTED

Whether Respondent interfered with Complainant's right to job protected leave under the DC Family and Medical Leave Act (DCFMLA), when Respondent terminated Complainant's employment on June 4, 2015 after Complainant left work without approval on June 3, 2015, due to a serious medical issue.

Whether Respondent retaliated against Complainant for requesting DCFMLA forms on June 3, 2015, by terminating Complainant's employment on June 4, 2015.

## SUMMARY OF FINDINGS

OHR finds probable cause that Respondent interfered with Complainant's right to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015, based on an

absence on June 3, 2015, which was covered by the DCFMLA. Complainant left work due to a medical issue that Complainant's doctor determined required intermittent leave. The record indicates that Respondent terminated Complainant for leaving work without authorization; however, Respondent did not rescind this termination once Respondent became aware that the absence was due to a serious medical condition covered by the DCFMLA.

OHR finds no probable cause that Respondent retaliated against Complainant for requesting DCFMLA leave forms by terminating her employment on June 4, 2015. Respondent made the decision to terminate Complainant's employment on June 3, 2015, and had not yet received her request for DCFMLA leave.

## JURISDICTION

OHR has jurisdiction over complaints alleging discrimination under the DCFMLA that are brought to OHR within one year of the occurrence of an alleged discriminatory act. *See* 4 DCMR § § 1610.3. The complaint indicates that the earliest discriminatory act occurred on June 4, 2015.[1] The complaint was filed on June 15, 2015 within the statutory period.[2] The alleged discriminatory acts occurred while Complainant was employed with Respondent at 1310 Southern Avenue, S.E., Washington, DC 20032.

The District of Columbia Family & Medical Leave Act, D.C. Code §§ 32-501, *et seq.*, applies to employers who employ 20 or more employees in the District of Columbia. *See* 4 DCMR § 1601. The record indicates that Respondent has more than 20 employees. To be eligible for leave, Complainant must, at the relevant time, work for Respondent in the District of Columbia, have been employed for at least one year without a break in service during the preceding seven years, and have worked for Respondent for at least one thousand hours during the preceding twelve-month period. *See* §§ 1603.1-.2. The record indicates that Complainant worked in the District of Columbia and had the requisite tenure and hours, and that Respondent does not dispute threshold eligibility.

Accordingly, OHR has jurisdiction over Complainant's DCFMLA claims.

## SUMMARY OF INVESTIGATIONS

OHR's investigation included a review of: (1) Complainant's Charge of Discrimination; (2) Respondent's Position Statement; (3) Respondent's Responses to OHR's Requests for Information; (4) Complainant's Rebuttal and Interview; and (5) Witness Interviews.

### Complainant's Allegations[3]

Complainant alleges that on June 4, 2015, Complainant's doctor sent the Respondent completed paperwork for DCFMLA leave related to Complainant's medical condition.

[1] *See* Charge of Discrimination dated July 16, 2015 (OHR File at § II).
[2] *See* Complainant's Initial Written Complaint, dated June 15, 2015 (OHR File at § II).
[3] *See* Charge of Discrimination dated July 16, 2015 (OHR File at § II).

*Sonia Edwards v. United Medical Center*
**Docket No.: 15-798-P(N)**
Page 3 of 15

Complainant returned to work the same day and met with Respondent's Executive Vice President of Human Resources (Vice President) to discuss Complainant's request for DCFMLA leave. However, at the meeting, Respondent did not address the DCFMLA request but informed Complainant of Respondent's decision to terminate Complainant's employment allegedly for walking off the job on June 3, 2015. Respondent had full knowledge of the medical reason Complainant departed from her job.

## Respondent's Position[4]

Respondent claims that Complainant was discharged after leaving work without permission and without clocking out. Respondent gave Complainant every opportunity to address and correct her longstanding performance and conduct problems, but she simply was unwilling to do so. Her request for DCFMLA leave appears to have been a last ditch effort to insulate herself from her own conduct underlying her termination.

Respondent has a policy allowing for up to sixteen weeks of medical leave in a twenty-four month period pursuant to the DCFMLA. The policy specifically sets forth that the leave may be taken continuously, intermittently, or on a reduced work schedule basis. The policy also sets forth the procedure for requesting such leave and the documentation required.

Complainant received a copy of these policies and signed an acknowledgment of their terms upon the commencement of her employment with Respondent.[5] Moreover, as a member of the Human Resources Department, Complainant was very familiar with these policies and the venues available for reporting any violations of these policies.

In December 2013, Complainant requested and was granted approximately five weeks of leave pursuant to the DCFMLA to recover from childbirth and bond with her newborn baby. At the conclusion of her leave, she returned to her prior job in the Hospital without incident.

Respondent first hired Complainant as a temporary employee in March 2010. On April 4, 2011, Complainant was hired as a full-time employee as a Human Resources Assistant II in the Human Resources Department. In this position, Complainant reported to the Vice President until March 16, 2015, when the Human Resources Manager (Manager) was hired and became Complainant's immediate supervisor. The Manager assumed supervision of the entire Department, other than Administrative Coordinator.[6]

Complainant had an extremely difficult time accepting the Manager's authority. She often responded to the Manager with hostility or ignored him. Additionally, the Manager became aware from talking to others in the Department that Complainant was often away from the Human Resources office without permission.

---

[4] *See* Position Statement dated October 7, 2015 (OHR File at § V).

[5] *See* Exhibit B (OHR File at § V).

[6]*See* Exhibit C (OHR File at § V). .

On June 3, 2015, the Manager called Complainant into his office to discuss keeping the various forms in the reception area of Human Resources stocked. Complainant responded, "Can't [a temporary employee in the Human Resources Department] do that?" The Manager explained that one person needed to be accountable for the forms, and because Complainant's desk was in that area, she was in the best position to notice when a particular form was low. Manager asked Complainant to sit down and she refused. Manager asked her if she realized that she worked for him. Her response was, "No, I work for [the Hospital!]," and the Manager then clarified, "Do you realize I am your supervisor? That you report to me?" and Complainant responded, "Well you don't own me! I'm not your slave!"

After leaving the Manager's office, Complainant took her lunch break; at the conclusion of her lunch break, rather than returning to work, Complainant went to the Hospital's Occupational Health office and reported that she was having an anxiety attack or panic attack as a result of her interaction with the Manager. Complainant was seen by a nurse, who spoke with Complainant briefly and then told her she should return to work and follow up with her primary care physician when she was able to do so. The nurse filled out a form listing that same day, June 3, 2015, as Complainant' return to work date.[7] The nurse did not tell Complainant to leave work for the day. Moreover, as a nurse, she did not have the authority to tell Complainant to leave for the day. Only a physician, physician assistant, or nurse practitioner is able to make that determination.

Complainant did not return to work, instead, Complainant returned to the Human Resources office and left a copy of the Occupational Health form in the inbox on the Manager's door and left a copy with the Administrative Coordinator (Coordinator) to give to the Vice President. Complainant did not inform anyone that she was leaving for the day; nor did Complainant clock out. Complainant simply left and did not return. Approximately thirty minutes later, the Manager realized Complainant had left the Hospital. The Manager reported this to the Vice President. Based on this incident and Complainant's work history, the Vice President made the decision to terminate Complainant as shown in an email correspondence between the Vice President and Manager.[8] The Vice President e-mailed Complainant to inquire if Complainant intended to come to work the next day and explained that she needed to follow up with Complainant regarding the events that occurred. The Vice President asked Complainant to come to her office when she got in or to let the Vice President know when she was available for a telephone call if Complainant did not intend on coming back to work.[9]

The next day, June 4, 2015, Complainant met with Vice President at approximately 2:30 PM, the Vice President informed Complainant that she was being terminated for leaving the day before. After their meeting, Respondent received a fax from Complainant's doctor requesting Complainant's be excused from work on June, 4, 2015 to June 7, 2015. The note did not provide a reason for the absence. Additionally, the fax included a certification of serious health condition stating that Complainant needed intermittent leave for four days per month for approximately one year for situational stress disorder.[10] The certification lists June 4, 2015 as the

---

[7] *See* Exhibit E (OHR File at § V).

[8] *See* Exhibit F (OHR File at § V).

[9]*Id.*

[10] *See* Exhibit H (OHR File at § V).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 5 of 15

commencement of the condition. Complainant had not previously requested DCFMLA paperwork or otherwise informed anyone of her intention to seek DCFMLA leave. By the time the Vice President received the paperwork, the request was moot as Complainant had already been terminated.

## Complainant's Rebuttal[11]

Complainant went to the Occupational Health Department after suffering an anxiety attack that occurred when meeting with the Manager. Complainant called the Vice President while waiting to be seen at the Occupational Health Office to inform the Vice President that Complainant was having trouble breathing. Vice President responded, "Okay Sonia." Complainant provided the Manager a copy of the medical note and informed him that Complainant was dismissed to go home. The Manager did not respond or acknowledge Complainant. Complainant attempted to provide the Vice President a copy as well, but the Vice President's office door was closed because she was on a conference call. Complainant provided Coordinator a copy of Complainant's medical documentation.

Complainant also asked Coordinator for DCFMLA papers to take to Complainant's doctor's office. Coordinator responded that copies of the forms needed to be made. Complainant was still feeling the after-effects of the anxiety attack, and left before receiving any DCFMLA papers. Complainant forgot to clock out.

Complainant worked at Respondent for 5 years and Complainant never received any disciplinary action pertaining to Complainant's performance or behavior, nor was it addressed in Complainant's annual evaluations.

Complainant had no issue with the Manager's authority.  Complainant states Manager started asking Complainant to do fraudulent activities in regards to processing new hires.  These activities included completing background checks and verifying credentials. On numerous occasions, Complainant attempted to explain to the Manager the required steps to complete the hiring process per United Medical Center's regulations. Manager informed Complainant that he needed Complainant to bring the new hire candidates on board.

Complainant informed the Vice President as well as the Coordinator of what was occurring and nothing was done. On June 2, 2015, Complainant went to the Vice President's office to discuss why proper procedures were not in place. Complainant felt the Vice President and Manager were trying to hold her accountable for the processing of new hires. Complainant met with the CEO on June 3, 2015, to inform him of what was going on.

On June 3, 2015, the Manager asked Complainant to come into his office when Complainant was about to go to lunch to speak with Complainant about some of the Manager's concerns.  During the meeting, the Manager became angry and screamed at the Complainant, "Do you not know you work for me?"  After being released from the Manager's office Complainant went to lunch trying to gather herself, but became more upset. When it was almost time to return to the office

---

[11] *See* Letter dated October 28, 2015 (OHR File at § IV).

Complainant started having difficulty breathing, Complainant was very nervous, and her heart was beating fast, so Complainant went to the Occupational Health office to see the nurse. The nurse advised Complainant to sit down, take a deep breath, and to relax. The nurse provided Complainant with a medical note,[12] and advised Complainant to go home and follow up with her doctor. At no point did she say return to work.

Complainant returned to the Human Resources office, made two copies of the medical note, and then went to the Manager's office to inform him that Complainant was sent home for the day, the Manager did not acknowledge Complainant, so Complainant placed the note in his box on his door. Complainant also provided a copy to the Coordinator because the Vice-President's door was closed. Complainant asked the Coordinator for the DCFMLA paperwork, but the Coordinator had to make copies. So Complainant left to go home and scheduled a follow up appointment with her doctor for June 4, 2015.

The next day, Complainant received an email from the Vice President asking to speak with Complainant in regards to the incident. Complainant never walked off Complainant's job the entire time of working at Respondent's facility without permission from a higher authority. The nurse has sent Complainant home before due to medical issues, and it was never an issue with Complainant's supervisor. Complainant also reached out to the Coordinator on June 4th, trying to reach the Vice President, and she informed Complainant that she would not be available until later.

When Complainant arrived at the office on June 4, 2015, Complainant met with the Chief Compliance Officer to discuss how Complainant had been harassed, and how Complainant felt she was being set up to take the blame for the Manager's instructions. The Chief Compliance Officer stated he would look into the matters and informed Complainant that he would have to discuss these issues with CEO.

Complainant never received DCFMLA papers from Respondent, but received them from Complainant's doctor, who had the standard DCFMLA documents. On numerous times since the Manager started in the department, Complainant reached out to the Vice President to complain about the Manager's harassing behavior.    This included questioning Complainant about going to the restroom, following Complainant throughout the building to see what and where Complainant was going, and questioning if phone calls were personal. Complainant felt her termination was pre-planned because Respondent knew Complainant was having some medical issues, and everyone in the office was aware. Complainant provided documentation and asked the Office Administrator for the DCFMLA documents.

## List of Documents

OHR reviewed and considered the following documents provided by Complainant:[13]

A. Complainant's Affidavit

---

[12] *See* Certification of Medical Care (OHR File at § IV).

[13] *See* OHR File at § IV.

    B. Complainant's Rebuttal
    C. Termination Policy
    D. Leave Under DCFMLA Policy
    E. Email thread, beginning April 29, 2015, authored by Complainant
    F. Email dated April 24, 2015, authored by Complainant
    G. Email dated April 30, 2015, authored by the Executive Vice President of Human
       Resources
    H. Termination Clearance Policy
    I. Doctor's note, dated June 4, 2015.
    J. Certification of Health Care Provider for Employee's Serious Health Condition, dated
       June, 4, 2015
    K. Occupational Health, Certification Medical Care, dated June 3, 2015

OHR reviewed and considered the following documents provided by Respondent:[14]

    A. Position Statement
    B. EEO Policy
    C. Leave Under DCFMLA Policy
    D. Receipt of Employee Handbook
    E. Email dated March 17, 2015, authored by the Executive Vice President of Human
       Resources
    F. Email Thread dated April 30, 2015, authored by Executive Vice President of Human
       Resources
    G. Occupational Health, Certification Medical Care, dated June 3, 2015
    H. Email dated June 3, 2015, authored by the Executive Vice President of Human Resources
    I. Fax cover sheet, dated June 5, 2015, from Complainant's physician
    J. Doctor's note, dated June 4, 2015.
    K. Certification of Health Care Provider for Employee's Serious Health Condition, dated
       June 4, 2015
    L. List of terminated employees during relevant period

## Documents Summary

### Complainant Documents

Complainant submitted email conversations with Vice President beginning on April 24, 2015. In the email dated April 24, 2015, Complainant stated Manager was unaware of his duties. On April 29, 2015, Complainant again levied a complaint against Manager, claiming he was rude when speaking to Complainant.

Complainant provided a completed Certification of Health Care Provider for Employee's Serious Health Condition signed by Complainant's physician dated June 4, 2015. This form indicates that Complainant suffers from situational distress disorder and required intermittent leave four

---

[14] *See* OHR File at § V.

days per month.   The certification also shows Complainant's condition requires follow-up treatments or reduced work schedule, could lead to episodic flare-ups, and last for 6-12 months.[15]

Complainant presented the Certification of Medical Care from Occupational Health dated June 3, 2015.[16]

### *Respondent Documents*

Respondent provided a list of involuntary terminations spanning from June 4, 2014 to June 4, 2015.  This list reveals out of the 55 employees terminated, 14 employees were terminated for job abandonment.

Respondent presented an email dated June 3, 2015, written by Vice President and addressed to Manager, stating she intended to terminate Complainant's employment the next day.   In a separate email, also dated June 3, 2015, Vice President informed Complainant she was aware that Complainant left work without permission, and she needed to speak to Complainant the next day.

Respondent submitted a fax cover sheet it received from Complainant's physician.   The fax was dated June 5, 2015, and included the Doctor's note and Certification of Health Care Provider for Employee's Serious Health Condition, both dated June 4, 2015.   The doctor's note indicated Complainant was unable to work between June 3, 2015 and June 7, 2015, and the medical certification indicated "situational stress disorder" necessitated intermittent leave.

### **Witness Statements**
OHR obtained and considered the following witness statements:[17]

### *Complainant*

Complainant explained that even though the nurse's note indicated Complainant could go back to work, the nurse verbally told Complainant to go home.   Complainant states that on June 3, 2015, there were no DCFMLA forms in the requisite forms box in the office.

### *Witness One, Executive Vice President of Human Resources*
The Executive Vice President of Human Resources was the decision maker in Complainant's employment termination, and states that Complainant received verbal communications regarding her performance and discipline. The Witness further states that overall, Complainant performed at a level of needing improvement.   The Witness states the goal of Respondent is to coach employees who have performance issues, and give them an opportunity to improve rather than always taking punitive measures.   In regards to Complainant's termination, the witness states

---

[15] Respondent also submitted the same Certification of Health Care Provider.

[16] OHR notes that the meaning of the certification is ambiguous.  The note states "They may return to work/ school approximately on 6-3-15," however, Director, made an additional note which reads "To see PCP." Therefore it is unclear whether certification indicates for Complainant to go back to work, or to leave to see her primary care physician.

[17] *See* OHR File at § III.

that Complainant was terminated for not following hospital protocol, when she left the premises
without informing a supervisor or clocking out. At the time the decision was made to terminate
Complainant, the Witness was not aware of a request or intent by Complainant to exercise rights
under the DCFMLA, nor was DCFMLA a factor in the decision to terminate Complainant's
employment.

## Witness Two, Former Chief Compliance Officer
The Former Chief Compliance Officer is no longer an employee of Respondent. The Witness
states that he was to be consulted in regards to Complainant's termination. The Witness further
states when an individual is terminated after there was an issue of whistleblowing, as the
Compliance Officer, the Witness should have been consulted. The Witness states that
Complainant qualified as a whistleblower. The Witness states he believed Complainant was
terminated wrongfully.

## Witness Three, Director of Occupational Health
The Director of Occupational Health states on June 3, 2015, she interviewed, accessed, and
advised Complainant to make an appointment with her personal physician right away. The
Witness states that she issued Complainant a "Return to Duty/Go Home" slip. The Witness
further states that Complainant was to seek an appointment with her physician as soon as
possible; if she was able to get an appointment that day, she should inform her manager, and go
see her doctor. However, if she was unable to see her doctor that day, Witness informed
Complainant to return to work.

## Witness Four, Human Resource Coordinator
The Human Resource Coordinator states Complainant gave her a form to give to the Executive
Vice President of Human Resources, which she did. The Witness states that Complainant did
request DCFMLA paperwork on June 3, 2015; however, when the Witness went to retrieve the
paperwork and returned, Complainant was gone. The Witness states that she was not aware that
Complainant was leaving work. The Witness states Complainant still had access to DCFMLA
paperwork, as it's provided on Respondent's computer system, and as a member of Human
Resources, Complainant had access to the human resources folder, which is computer based and
also a physical file. The Witness further states that other employees, including Complainant
have taken leave under the DCFMLA, and was not terminated in retaliation for taking such
leave.

## Comparator Data
A review of a list of involuntary terminations from the period of June 4, 2014 – June 4, 2015,
reveals that 55 employees were terminated for various reasons. Of the 55 employees, 14
employees were terminated for job abandonment, which was the violation Complainant was
terminated for.[18]

---

[18] *See* Exhibit E (OHR File at § V).

## LEGAL ANALYSIS

## DC FAMILY AND MEDICAL LEAVE ACT

### Coverage and Types of Claims

The District of Columbia Family & Medical Leave Act, D.C. Code §§ 32-501, *et seq.*, applies to employers who employ 20 or more employees in the District of Columbia. *See* 4 DCMR § 1601.

Under the DCFMLA, a qualified employee is entitled to sixteen (16) weeks of family leave during a twenty-four (24) month period[19] for: "(1) [t]he birth of a child of the employee; (2) [t]he placement of a child with the employee for adoption or foster care; (3) [t]he placement of a child with the employee for whom the employee permanently assumes and discharges parental responsibility; or (4) [t]he care of a family member[20] of the employee who has a serious health condition." D.C. Code § 32-502 (a). A qualified employee is also entitled to sixteen (16) weeks of medical leave during a twenty-four (24) month period when the employee is unable to perform the functions of his or her position because of a serious health condition. *Id.* at § 32-503 (a).[21] The DCFMLA also provides certain protections to an employee while he or she is out on medical or family leave. For example, an employee is entitled to maintenance of health insurance benefits while out on leave, to be restored to the same or an equivalent position upon returning from leave, and seniority or other benefits accrued prior to commencing leave. *See* D.C. Code §§ 32-505 (a), (b), and (d).

There are two types of claims under the DCFMLA—interference and retaliation. *See* D.C. Code § 32–507(a) (interference); § 32–507(b)(1) (retaliation); *see also Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075 (D.C. 2008) ("Like its federal counterpart, the DCFMLA recognizes two theories for recovery-'the retaliation or discrimination theory and the entitlement or interference theory'")(internal citation omitted); *see also Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 328 (D.C. 2004)(seminal case in which the Court of Appeals held that, in addition to the statutory provision of job-protected leave, the makes it "unlawful to terminate an employee because that employee has taken protected family or medical leave.").

---

[19] The 24-month period may be counted based on a) calendar year, b) any fixed twelve-month period, c) a period measured forward from the date of first use of DCFMLA leave, or d) measured backward from the date the employee uses or would use DCFMLA leave, but the method must be uniformly applied to all employees and notice must be given. *See* 4 DCMR § 1616.1-.2. D.C. government agencies must use the third method. *See id.* at § 1616.3

[20] A family member includes any blood relation, child by legal custody, spouse, foster child, a child who lives with the employee for whom the employee discharges parental responsibility, or a person with whom the employee shares or shared within the past year a mutual residence and with whom the employee maintains a committed relationship. *See* 4 DCMR § 1699.1.

[21] The statute defines a "serious health condition" as, "a physical or mental illness, injury, or impairment, that involves: (A) Inpatient care in a hospital, hospice, or residential health care facility; or (B) Continuing treatment or supervision at home by a health care provider or other competent individual." *Id.* at § 32–501(9).

*Sonia Edwards v. United Medical Center*
Docket No.: 15-798-P(N)
Page 11 of 15

## DCFMLA Interference

It is unlawful under the DCFMLA for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by the DCFMLA. *See* D.C. Code § 32-507(a). The elements of a *prima facie* claim of interference are generally as follows: 1) Complainant is eligible for DCFMLA benefits, 2) Respondent interfered with, restricted, or denied Complainant's exercise of a right or attempt to exercise a right provided by statute, and 3) Complainant was prejudiced thereby. *See Hamilton v. Howard Univ.,* 960 A.2d 308, 317 (D.C. 2008) (Court of appeals reciting the pertinent regulatory eligibility requirements and requisite entitlements); *see also Gordon v. U.S. Capitol Police,* 778 F.3d 158, 164 (D.C. Cir. 2015) (elucidating generally the *prima facie* elements of an interference claim under comparable federal statute).[22]

### First Element - Eligibility

An employee who works for a covered employer is eligible for DCFMLA benefits, when: the employee has accrued at least one year of service, worked 1,000 hours or more during the 12-month period immediately preceding the leave request, he or she requires leave for a purpose covered by the statute, and he or she has provided sufficient information to the employer of his or her need for covered leave. *See* 4 DCMR §§ 1601.1-.6 (covered employers); § 1603.1-.2 (required tenure and hours); § 1605.2 (serious health condition); §1606.1 (qualifying reasons to care for a family member or the birth or placement of a child); §1614.1 (employee is required to provide reasonable notice of need to make use of leave); § 1614.7 (employer may be required to permit DCFMLA leave even without a direct request for DCFMLA leave). *See also* D.C. Code § 32-501 (defining an eligible employee).

### Second Element - Interference

An employer not only interferes with a right under the DCFMLA by denying the employee a right or benefit he or she is entitled to, but also by taking an action that has a reasonable tendency to interfere with an employee's exercise of DCFMLA rights. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164-66 (D.C. Cir. 2015) (finding a valid claim of interference where an employer expressed hostility towards Complainant's use of FMLA leave to discourage the employee from making use of leave.). For example, taking an adverse employment action against an employee who has inquired about, requested, or used DCFMLA protected leave could constitute interference if it affects access to future benefits. *See generally* 4 DCMR § 1621.1.

---

[22] The D.C. Family and Medical Leave Act (DCFMLA) was intended to address many of the same policy concerns as its federal counterpart, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654 (2000). Although the DCFMLA provides for broader coverage than the FMLA, the acts are substantially similar, and the D.C. Court of Appeals has looked to its federal counterpart, to assist in interpreting the prohibited acts under the DCFMLA. *See Hamilton v. Howard Univ.*, 960 A.2d 308, 317 (D.C. 2008). Accordingly, while the OHR is not bound by the legal decisions interpreting the federal statute, those decisions may be considered persuasive authority. *See Lenaerts v. District of Columbia Dept. of Employment Svs.*, 545 A.2d 1234, 1238 (D.C. 1988); *see also Chang v. Inst. For Public-Private P-ships, Inc.*, 846 A.2d 318 (D.C. 2004) (asserting a D.C. Court of Appeals opinion that the federal FMLA is used to interpret the DCFMLA).

Third Element - Prejudice

An employee is prejudiced or harmed where the "employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Roseboro v. Billington*, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).

## *OHR finds probable cause that Respondent interfered with Complainant's right to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015.*

The record establishes a *prima facie* claim of interference under the DCFMLA.

First, the record indicates that the Complainant suffers from a chronic serious health condition, and thus, is eligible for DCFMLA. Complainant's doctor submitted a fax dated June 5, 2015 to Respondent, containing documents indicating that Complainant suffered from situational stress disorder and required intermittent leave beginning on June 3, 2015. The medical leave form indicates Complainant's condition would require monthly follow up appointments for treatment, last an extended period of time (6-12 months), and could potentially lead to episodic flare-ups. Therefore, this medical condition classifies as a chronic serious health condition under the DCFMLA.[23]

Second, the record establishes that Respondent interfered with Complainant's right to exercise DCFMLA by terminating Complainant's employment on June 4, 2015, based on a qualifying absence on June 3, 2015. Due to her termination, Complainant was unable to exercise DCFMLA leave for which she was eligible.

Third, the record indicates that Complainant suffered prejudice when Respondent ended Complainant's employment. While the record supports Respondent's position that it decided to terminate Complainant's employment because Complainant left work without authorization, Respondent was effectively put on notice that Complainant's departure from work was due to a medical issue when it received medical leave documents from Complainant's physician. Under DCFMLA, if leave is unforeseeable, an employee must only notify their employer as soon as practicable.[24]  Complainant was prejudiced when Respondent did not reinstate Complainant after learning that Complainant's departure on June 3, 2015 was related to a medical condition, and thereby constituted protected leave under the DCFMLA.

Accordingly, there exists sufficient evidence to proceed to a hearing on this issue.

## DCFMLA Retaliation

Retaliation is unlawful under the DCFMLA. *See* D.C. Code § 32–507(b)(1); *Chang v. Instit. for Public-Private Partnerships, Inc.*, 846 A.2d 318, 328-29 (D.C. 2004); *see also Alford v.*

---

[23] *See* 4 DCMR § 1605.3(c).

[24] *See* 4 DCMR § 1614.3.

*Providence Hosp.*, 945 F.Supp.2d 98, 108 (D.D.C. 2013). The elements of a *prima facie* case of retaliation under the DCFMLA are: (1) Complainant engaged in a protected activity; (2) the employer took an adverse employment action; and (3) there was a causal connection between the two. *Chang*, 846 at 329-30.

First Element - Protected Activity

An employee engages in protected activity by exercising a right protected by the DCFMLA, including requesting or taking DCFMLA leave, or by opposing a practice made unlawful by the statute. *Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 329 (D.C. 2004) (finding that making use of DCFMLA leave is a protected activity); *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009).

Second Element - Adverse Action

An adverse employment action is an act that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Joyce v. Office of Architect of Capitol,* 966 F. Supp. 2d 15, 23 (D.D.C. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006)). *See also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) (opining that an adverse action could also be an action that results in prejudice to the employee).

Third Element - Casual Connection

"An employee can establish a causal connection by showing that the protected activity and the adverse action were not *wholly unrelated." Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009) (internal citations omitted). Close temporal proximity between the protected activity and the adverse action is one way of establishing a causal connection. *Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 329 (D.C. 2004).

***OHR finds no probable cause that Respondent retaliated against Complainant for engaging in protected activity on June 3, 2015, by terminating her employment on June 4, 2015.***

The record does not reasonably support a *prima facie* claim of retaliation under the DCFMLA.

First, Complainant engaged in a protected activity when she requested DCFMLA forms, thus the first element is reasonably supported. The second of element is also reasonably supported as Respondent took an adverse employment action against Complainant by terminating her employment on June 4, 2015.

However, the third element is not reasonably supported, as there exists no casual connection between Complainant's protected activity and the adverse action. Respondent's decision to terminate Complainant's employment occurred before Respondent was aware of Complainant's intent or request for DCFMLA leave. The decision to terminate Complainant's employment was made on June 3, 2015. Although Complainant claims she asked Human Resource Coordinator for DCFMLA forms, there is no evidence the decision-maker, the Vice President, was are of this request. An email correspondence between the Vice-President and Manager time-stamped June

3, 2015 at 4:34 PM, corroborates this fact.[25] Respondent did not learn of Complainant's intent to seek DCFMLA until June 4, 2015, when Respondent received a fax from Complainant's doctor. Therefore, Respondent could not have retaliated against the Complainant's desire to seek DCFMLA leave, because Respondent had already decided to terminate Complaint's employment based on her behavior on June 3, 2015.

Ultimately, however, as explicated above, the lack of a reasonable claim of retaliation does not obviate OHR's finding of probable cause that Respondent interfered with Complainant's DCFMLA rights. Especially when, after learning that Complainant's unauthorized absence was likely due to a serious medical condition, Respondent did not afford Complainant with DCFMLA job-protected leave for that absence.

## DETERMINATION

For the foregoing reasons, the OHR finds:

**PROBABLE CAUSE** to believe that Respondent interfered with Complainant's rights to DCFMLA leave when Respondent terminated Complainant's employment on June 4, 2015.

**NO PROBABLE CAUSE** to believe that Respondent retaliated against Complainant after she engaged in protected activity on June 3, 2015, by terminating her employment on June 4, 2015.

## *IT IS SO ORDERED.*

## ASSIGNMENT TO A HEARING EXAMINER AFTER A FINDING OF PROBABLE CAUSE

Probable cause having been found, this matter will be assigned to a hearing examiner, pursuant to 4 DCMR § 1622.9. At Respondent's election, the parties may first attempt conciliation by contacting Eloisa Rocha at eloisa.rocha@dc.gov. The hearing is *de novo*, includes discovery, pre-hearing statements, and testimony. *See* 4 DCMR §§ 1623.1, *et seq*. The hearing examiner will prepare a recommended finding for the Director's consideration, and the Director will issue a final order on the merits. § 1625.

## DCFMLA REQUEST FOR RECONSIDERATION AND PETITION FOR REVIEW

Complainant may request reconsideration of a no cause finding **within 15 calendar days from the following date:** ___7/26/17___, by submitting a written request to the Director at ohr.ogc@dc.gov. The request is not to exceed ten pages. The request must be based on misapplication of law, misstatement of material fact, or newly discovered evidence. 4 DCMR § 1625.4. A party may appeal a final decision under the DCFMLA by filing a petition for review

---

[25] *See* Exhibit F (OHR File at § V).

*Sonia Edwards v. United Medical Center*
**Docket No.: 15-798-P(N)**
Page **15** of **15**

with the Superior Court within 30 days of service of notice of the final decision.  4 DCMR §
1625.15.

Sincerely,

Date: _____Y-2Y-17_____

Mónica Palacio, Director
District of Columbia Office of Human Rights

Cc:

Michael Andrews
OHR Investigations Supervisor
Michael.andrews2@dc.gov

Albert Santiago
OHR Mediation Manager
Albert.santiago@dc.gov